Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HOMAYOUN SADR-ARHAMI,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> **TAX RISE INC.; ESSAM ABDULLAH A.K.A. SAM PRICE; FIDELITY TAX RELIEF LLC; BRIDGLEY INC.; ALEEVLY INC.; PRICE HOLDINGS, INC.; OPTIMA ADVOCATES, INC., and** DOES 1 through 10, inclusive, <br><br> Defendant(s). | Case No. <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> 1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] <br> 2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, HOMAYOUN SADR-ARHAMI ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following upon information and belief based upon personal knowledge:

## **NATURE OF THE CASE**

1.      Plaintiff brings this action for himself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of TAX RISE INC.; ESSAM ABDULLAH A.K.A. SAM PRICE; FIDELITY TAX RELIEF LLC; BRIDGLEY INC.; ALEEVLY INC.; PRICE HOLDINGS, INC.; OPTIMA ADVOCATES, INC. ("Defendants"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA"), thereby invading Plaintiff's privacy.

2.      The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.      In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls and messages are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.    TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered— and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

6.     The Ninth Circuit recently affirmed certification of a TCPA class case remarkably similar to this one in *Meyer v. Portfolio Recovery Associates, LLC*, __ F.3d__, 2012 WL 4840814 (9th Cir. Oct. 12, 2012).

## JURISDICTION & VENUE

7.     Jurisdiction is proper under *28 U.S.C. § 1332(d)(2)* because Plaintiff, a resident of California, seeks relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of Defendants, companies incorporated in California and an individual residing in California. Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction.  Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

///

8.     Venue is proper in the United States District Court for the Central District of California pursuant to *28 U.S.C. § 1391(b)(2)* because Defendants do business within the state of California and Plaintiff resides within this District.

## PARTIES

9.     Plaintiff, HOMAYOUN SADR-ARHAMI ("Plaintiff"), is a natural person residing in Los Angeles County, California and is a "person" as defined by *47 U.S.C. § 153 (39)*.

10.     Defendant, TAX RISE INC. (hereinafter "TAXRISE"), offers tax debt relief and tax debt settlement services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

11.     Defendant, FIDELITY TAX RELIEF LLC (hereinafter "FIDELITY"), offers tax relief services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

12.     Defendant, BRIDGLEY INC. (hereinafter "BRIDGLEY"), offers financial consulting and planning services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

13.     Defendant, ALEEVLY INC. (hereinafter "ALEEVLY"), offers debt relief services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

14.     Defendant, PRICE HOLDINGS, INC. (hereinafter "PHI"), offers debt relief services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

15.     Defendant, OPTIMA ADVOCATES, INC. (hereinafter "OPTIMA"), offers financial consultation services to consumers, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

16.     Defendant ESSAM ABDULLAH A.K.A. SAM PRICE (hereinafter "ABDULLAH") is an individual who at all relevant times was and is the owner and CEO of Defendants TAXRISE, BRIDGLEY, ALEEVLY, PHI, and OPTIMA. As owner of Defendants TAXRISE, BRIDGLEY, ALEEVLY, PHI, and OPTIMA, ABDULLAH was responsible for the overall success of the company.

ABDULLAH materially participated in the calling practices of Defendants TAXRISE, BRIDGLEY, ALEEVLY, PHI, and OPTIMA by occupying a position of critical importance to their business; as the owner / CEO of Defendants TAXRISE, BRIDGLEY, ALEEVLY, PHI, and OPTIMA, ABDULLAH exercised control over the affairs of the companies and regularly engaged, albeit more often indirectly than directly, in the calling practices. Defendant ABDULLAH continued to play a key role in maintaining and expanding Defendants TAXRISE, BRIDGLEY, ALEEVLY, PHI, and OPTIMA's activities throughout the time in question.

17.    The above named Defendants, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

18.    Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

19.    Beginning in or around February 2019, Defendants contacted Plaintiff via text message on his cellular telephone ending in -2309, in an effort to sell or solicit their services.

///

20.   Defendants contacted Plaintiff on his cellular telephone from phone numbers confirmed to belong to Defendants, including without limitation (949) 627-0709.

21.   On or before February 22, 2019, Plaintiff and Defendants engaged in conversation related to Defendants' services.   Ultimately, Plaintiff chose not to contract Defendants' services.

22.   Defendants continued contacting Plaintiff via text message on his cellular phone.

23.   Defendants' message of February 28, 2019 contained language implying Plaintiff had retained Defendants' services.   The message read:



24.   Thereafter, Plaintiff called Defendant and asked them to cease contacting him.

25.   However, Plaintiff's efforts to get Defendants to cease its automated barrage of solicitations were to no avail, and Defendants continued to harass and annoy him with text messages.

///
///
///
///
///

26.     Defendants' message of October 23, 2019 also contained language implying Plaintiff had retained Defendants' services.  The message read:



27.     On November 15, 2019, Defendants again contacted Plaintiff via text message.  The message read:



28.     On December 11, 2019, Defendants again contacted Plaintiff via text message.  The message read:



29.     On December 13, 2019, Defendants again contacted Plaintiff via text message.  The message read:



30.     On March 17, 2020, Defendants again contacted Plaintiff via text message.  The message read:



31.     Plaintiff sent Defendants a message asking them to stop contacting him.  Plaintiff's text message read:



32.     At that point, Plaintiff had withdrawn any consent Defendants might have believed Defendants had prior to that point.  Despite Plaintiff's responses, Defendants continued to send unwanted text messages to Plaintiff.

33.     On April 1, 2020, Defendants again contacted Plaintiff via text message.  The message read:



34.     Plaintiff responded to Defendants asking them to "stop."



35.     In response to Plaintiff's request, Defendants sent the following message:



///

///

///

36.     However, on April 7, 2020, Defendants sent Plaintiff the following message:



37.     Defendants again contacted Plaintiff on May 15, 2020.  As before, Plaintiff requested Defendant "STOP" and Defendant acknowledge Plaintiff's requested:



///
///
///
///

38.     Defendants again contacted Plaintiff on June 12, 2020.  As before, Plaintiff requested Defendant "STOP" and Defendant acknowledge Plaintiff's requested:



39.     Defendants again contacted Plaintiff on June 23, 2020.  As before, Plaintiff requested Defendants "STOP" and Defendant acknowledge Plaintiff's requested:



40.     These text messages placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1).

41.     Defendants' calls constituted calls that were not for emergency purposes as defined by *47 U.S.C. § 227(b)(1)(A)*.

42.     The telephone number that Defendants, or their agent texted was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming texts pursuant to 47 U.S.C. § 227 (b)(1).

43.      These text messages constituted texts that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

44.     Plaintiff was never a customer of Defendants' services.  Accordingly, Defendants and their agents never received Plaintiffs prior express consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

45.     These text messages by Defendants, or its agents, violated 47 U.S.C. § 227(b)(1).

46.     In addition, on multiple occasions Plaintiff told Defendants to stop contacting him. Accordingly, Defendants never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to *47 U.S.C. § 227(b)(1)(A)*.

47.     Plaintiff alleges upon information and belief, including without limitation his experiences as recounted herein, especially his experience of being called after expressly requesting that Defendants cease text messaging him, that

Defendants lacks reasonable policies and procedures to avoid the violations of the Telephone Consumer Protection act herein described.

**CLASS ALLEGATIONS**

48.    Plaintiff brings this action individually and on behalf of all others similarly situated, as a member the two proposed classes (hereafter, jointly, "The Classes"). The class concerning the ATDS claim for no prior express consent (hereafter "The ATDS Class") is defined as follows:

> All persons within the United States who received any solicitation/telemarketing text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such text messages within the four years prior to the filing of this Complaint

49.    The class concerning the ATDS claim for revocation of consent, to the extent prior consent existed (hereafter "The ATDS Revocation Class") is defined as follows:

> All persons within the United States who received any solicitation/telemarketing text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had revoked any prior express consent to receive such text messages prior to the text messages within the four years prior to the filing of this Complaint.

50.    Plaintiff represents, and is a member of, The ATDS Class, consisting of all persons within the United States who received any unsolicited text messages from Defendants to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously not provided their cellular telephone number to

Defendant within the four years prior to the filing of this Complaint.

51.     Plaintiff represents, and is a member of, The ATDS Revocation Class, consisting of all persons within the United States who received any solicitation/telemarketing text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had revoked any prior express consent to receive such calls prior to the calls within the four years prior to the filing of this Complaint.

52.     Defendants, their employees and agents are excluded from The Classes.  Plaintiff does not know the number of members in The Classes, but believes the Classes members number in the thousands, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

53.     The Classes are so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of The Classes members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The Classes includes thousands of members.  Plaintiff alleges that The Classes members may be ascertained by the records maintained by Defendant.

54.     Plaintiff and members of The ATDS Class and The ATDS Revocation Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and ATDS Class members via their cellular telephones thereby causing Plaintiff and ATDS Class and ATDS Revocation Class members to incur certain charges or reduced telephone time for which Plaintiff and ATDS Class and ATDS Revocation Class members had previously paid by having to retrieve or administer messages left by Defendants during those illegal calls, and invading the privacy of said Plaintiff and ATDS Class and ATDS Revocation Class members.

55.     Common questions of fact and law exist as to all members of The ATDS Class which predominate over any questions affecting only individual members of The ATDS Class.  These common legal and factual questions, which do not vary between ATDS Class members, and which may be determined without reference to the individual circumstances of any ATDS Class members, include, but are not limited to, the following:

a.      Whether, within the four years prior to the filing of this Complaint, Defendants made any telemarketing/solicitation text messages (other than a call made for emergency purposes or made with the prior express consent of the called party) to a ATDS Class member using any automatic telephone dialing system or any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

b.      Whether Plaintiff and the ATDS Class members were damaged thereby, and the extent of damages for such violation; and

c.      Whether Defendants should be enjoined from engaging in such conduct in the future.

56.     As a person that received numerous telemarketing/solicitation text messages from Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of The ATDS Class.

57.     Common questions of fact and law exist as to all members of The ATDS Revocation Class which predominate over any questions affecting only individual members of The ATDS Revocation Class.  These common legal and factual questions, which do not vary between ATDS Revocation Class members, and which may be determined without reference to the individual circumstances of any ATDS Revocation Class members, include, but are not limited to, the following:

a.   Whether, within the four years prior to the filing of this Complaint, Defendants made any telemarketing/solicitation text messages (other than a call made for emergency purposes or made with the prior express consent of the called party) to an ATDS Revocation Class member, who had revoked any prior express consent to be called using an ATDS, using any automatic telephone dialing system or any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

b.   Whether Plaintiff and the ATDS Revocation Class members were damaged thereby, and the extent of damages for such violation; and

c.   Whether Defendants should be enjoined from engaging in such conduct in the future.

58.   As a person that received numerous telemarketing/solicitation text messages from Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, after Plaintiff had revoked any prior express consent, Plaintiff is asserting claims that are typical of The ATDS Revocation Class.

59.   Plaintiff will fairly and adequately protect the interests of the members of The Classes.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

60.   A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Classes members is impracticable.  Even if every Classes member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Classes member.

61. The prosecution of separate actions by individual Classes members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Classes members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

62. Defendants have acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227 et seq.

63. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above.

64. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227 et seq.*

65. As a result of Defendants' negligent violations of *47 U.S.C. § 227 et seq.*, Plaintiff and the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)*.

66. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

///

///

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227 et seq.

67.    Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above.

68.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227 et seq.*

69.    As a result of Defendants' knowing and/or willful violations of *47 U.S.C. § 227 et seq.*, Plaintiff  and the Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)* and *47 U.S.C. § 227(b)(3)(C).*

70.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants for the following:

### FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227 et seq.

- As a result of Defendants' negligent violations of *47 U.S.C. §227(b)(1),* Plaintiff and the Class members are entitled to and request $500 in statutory damages, for each and every violation, pursuant to *47 U.S.C.  227(b)(3)(B)*; and

- Any and all other relief that the Court deems just and proper.

///
///
///

1

## SECOND CAUSE OF ACTION

## Knowing and/or Willful Violations of the Telephone Consumer Protection Act 47 U.S.C. §227 et seq.

- As a result of Defendants' willful and/or knowing violations of *47 U.S.C. §227(b)(1)*, Plaintiff and the Class members are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(b)(3)(B)* and *47 U.S.C. §227(b)(3)(C)*; and

- Any and all other relief that the Court deems just and proper.

## JURY DEMAND

71.    Pursuant to his rights under the Seventh Amendment to the United States Constitution, Plaintiff demands a jury on all issues so triable.


Respectfully submitted this 30th day of July 2020.


LAW OFFICES OF TODD M. FRIEDMAN, P.C.
By:   /s Todd M. Friedman
        Todd M. Friedman
        Law Offices of Todd M. Friedman
        Attorney for Plaintiff